# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BALTIMORE PILE DRIVING AND MARINE CONSTRUCTION, INC., | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19L-07-090 SKR |
| | ) | |
| WU & ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant, Counterclaimant, Cross-claimant and Third Party Party Plaintiff, | ) ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Third Party Defendant. | ) | |

## DECISION AFTER TRIAL

Timothy S. Martin, Esquire, and William J. Taylor, Esquire (*Pro Hac Vice*) White and Williams LLP, *Attorneys for Plaintiff Baltimore Pile Driving and Marine Construction Inc. & Third-Party Defendant Selective Insurance Company.*

Edward Seglias, Esquire, Emily Letcher, George E. Pallas, Esquire (*Pro Hac Vice*), and Matthew L. Erlanger, Esquire (*Pro Hac Vice*) Cohen Seglias Pallas Greenhall & Furman PC. *Attorneys for Defendant Wu & Associates, Inc.*

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background attendant to this action was set forth in detail in this Court's opinion in *Baltimore Pile Driving and Marine Construction v. Wu and Associates*.[1] In this Memorandum Opinion, the Court will only recite those facts that are germane to its current ruling.

From May 24 to May 26, 2021, the Court conducted a trial to resolve BPDI's claims against Wu for Breach of Contract and the Delaware Building Construction Payments Act (the "Payments Act"). On December 1, 2021, the Court found Wu liable to BPDI for a number of Change Order Requests ("CORs"), worth $389,207.50, in addition to pre- and post-judgment interest at the legal rate. The Court reserved its ruling on the parties' request for attorneys' fees pursuant to 6 *Del. C.* §3506 *et seq*. and requested supplemental submissions from the parties. On June 28, 2022, the Court held arguments on the issue.

## II. STANDARD OF REVIEW

The Court is the finder of fact in a bench trial.[2] The plaintiff must prove each element of a claim by a preponderance of the evidence, meaning that the Court shall find in favor of the party upon whose side "the greater weight of the evidence is found."[3] Since the Court is the finder of fact, it is up to the Court to weigh the credibility of witnesses and resolve conflicts in witness testimony.[4]

---

[1] *Baltimore Pile Driving and Marine Constr., Inc. v. Wu & Associates, Inc.,* 2021 WL 5711454 (Del. Super. Dec. 1, 2021) (TABLE).

[2] *Pencader Associates, LLC v. Synergy Direct Mortg. Inc*., 2010 WL 2681862, at *2 (Del.Super. June 30, 2010).

[3] *Id.* (quoting *Pouls v. Windmill Estates, LLC,* 2010 WL 2348648, at *4 (Del.Super. June 10, 2010)).

[4] *Id.* at *3.

### III.   ANALYSIS

BPDI asserts that it should be awarded attorneys' fees based on: (1) Paragraph H of the Reimbursement Section, found in the BPDI Proposal and (2) the Delaware Building Construction Payments Act, 6 *Del. C.* §3501.

**A. Paragraph H of the BPDI Proposal**

Paragraph H of the Reimbursement Section provides for reimbursement of costs for:

> All legal fees resulting from BPDI's [sic] need to secure
> legal services for any infraction of the terms and
> conditions of this Executed Proposal or any
> Contract/Purchase Order, and any disputes arising from
> the contract [sic] to be adjudicated in Harford County,
> Maryland.

The parties dispute the applicability of this provision on two grounds: (1) whether the two phrases are written in conjunction or separately and, concomitantly (2) whether it is sufficiently clear.

First, the Court must determine if Paragraph H is an enforceable fee-shifting provision. Generally, Delaware courts follow the American Rule: parties are responsible for their own attorneys' fees.[5] However, parties may still shift fees to another party through a contractual provision.[6] For a fee-shifting provision to be enforceable, it must be a "clear and unequivocal agreement in connection with a dispute between parties involving a failure to fulfill obligations under the

---

[5] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007).
[6] *Id.*

3

contracts."[7] Parties should not "expect the Court to deviate from the American rule if care has not been taken in drafting a contract's language."[8] Wu contends that Paragraph H is not sufficiently clear to be an enforceable fee-shifting provision.

BPDI responds that the intent of Paragraph H is clear: to allow a recovery of attorneys' fees if an infraction created the need for BPDI to seek legal services. Thus, the breach by Wu would justify the reimbursement of legal fees.[9] Wu contends that BPDI's "need to secure legal services" for "any infraction" does not equate to a clear and unequivocal agreement for fee-shifting, and given this interpretation, "even the most immaterial infraction" could be subject to fee-shifting.[10]

Next, the parties dispute whether Paragraph H should be read as one conjunctive provision or two distinct and separate ones. The paragraph contains language in relation to both attorneys' fees and venue. BPDI claims that these are two distinct provisions, and are not dependent on one another.[11] Wu disagrees, and references the Subcontract's heading, "BPDI will be reimbursed for the following cost and/or occurrences." According to Wu, this heading implies that BPDI is only able to recover fees incurred from such disputes provided that they are adjudicated in Harford County, Maryland. Reference to the Harford County, Maryland venue

---

[7] *Winshall v. Viacom Int'l Inc.*, WL 5787989 at *4 (Del. Super. Nov. 6, 2019).
[8] *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466 at *2, (Del. Super. Mar. 29, 2012)
[9] Pl.'s Supplemental Br. at 3.
[10] Wu supposes that a hypothetical mailing error would then justify a need for counsel and a subsequent recovery of fees. *See* Def.'s Supplemental Opp. Br. at 5.
[11] BPDI justifies its decision to litigate in New Castle County, Delaware rather than Harford County, Maryland because of the express requirements of the mechanics' lien statute in Delaware. Title 25 *Del C.* §2712(a) states that the lien claim must be filed in the county wherein such structure is situated, which in this case, was New Castle County. The Court will not address this issue because the justification for venue selection is irrelevant to the analysis of whether the provision warrants an award for attorneys' fees.

4

provision makes it even more cloudy because the contract already contains an express venue provision invoking the jurisdiction of Delaware.

Further, the parties dispute the specific meaning of "and any disputes arising from the contract to be adjudicated in Harford County, Maryland." BPDI argues that this is a venue selection provision. Wu disagrees because the word "venue" is not mentioned, and elsewhere, Paragraph 20 of the Wu Addendum addresses forum selection.[12] Wu points to Delaware's rules of contract construction where courts "will not read a contract to render a provision or term 'meaningless or illusory.'"[13] Thus, according to Wu, the Harford County reference must be given some meaning. Wu argues that "the first portion . . . must be read as pertaining to fees not pertaining to an adjudication in the courts, and the second portion . . . must be read as pertaining to fees incurred in actions adjudicated in Harford County, Maryland."[14] Alternatively, Wu alleges that this entire dispute over the reading of Paragraph H signifies its lack of clarity, thus bolstering the former point that an unclear fee-shifting provision is unenforceable.

Under Delaware law, there is no "bright-line language" to establish a fee-shifting provision.[15] "Each provision is unique and must be decided under the facts of that particular case."[16] However, it is "critical when drafting agreements

---

[12] *See* Trial Exhibit 3. In forming the contract, BPDI Vice President Peter Robey had crossed out "the Superior Court of New Jersey" in Paragraph 20 and replaced it with "Wilmington, Delaware." *See, Id.*

[13] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[14] Def.'s Supplemental Opp. Br. at 7.

[15] *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012)

[16] *Id.*

that counsel use clear and precise language to set forth the parties' intentions."[17] Thus, the Court must look to the exact wording of Paragraph H.[18]

Based on the wording, the intent behind Paragraph H is not "spelled out", nor is there reference to "prevailing parties", which the Superior Court has previously found as a "hallmark term of fee-shifting provisions."[19] Further, the provisional use of "and" juxtaposed to the two phrases would lead a person to reasonably believe that the recovery of legal fees is tied to litigation in Harford County. Rather than include the provision about Harford County elsewhere in the contract, the drafters chose to structure Paragraph H as a reimbursement for both attorneys' fees *and* disputes adjudicated in Harford County. The Court cannot ignore this fact, nor may it choose to read the provision selectively. "We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."[20] This, in addition to the fact that a forum selection clause is already included elsewhere in the Subcontract, holds significant weight. Both parties here were represented by "sophisticated counsel that know how to draft . . . a fee shifting provision under Delaware law."[21] The Court agrees that Paragraph H is poorly drafted and lacks sufficient clarity. The mere fact that BPDI invites the Court to look to the intent of the parties demonstrates that the provision is not a clear and unequivocal agreement. Paragraph H does not represent a clear and unequivocal agreement, and is thus unenforceable as a fee-shifting provision.

---

[17] *Id.*

[18] *Majkowski v. Am. Imaging Mgt. Services*, LLC, 913 A.2d 572, 588 (Del. Ch. 2006).

[19] *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012)

[20] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[21] *Winshall v. Viacom Int'l Inc.*, WL 5787989 at *5 (Del. Super. Nov. 6, 2019).

**B. Delaware Building Construction Payments Act**

Separately, BPDI argues that attorneys' fees are warranted pursuant to the Delaware Building Construction Payments Act ("the Payments Act"). Title 6 *Del. C.* §3501 states:

> (e) If it is determined by a court of competent jurisdiction that a payment withheld pursuant to paragraph (a)(3) or subsection (d) of this section was not withheld in good faith for a reasonable cause, the court may award reasonable attorney's fees to the prevailing party. In any civil action brought pursuant to this section, if a court determines after a hearing for such purpose that the cause was initiated, or a defense was asserted, or a motion was filed or any proceeding therein was done frivolously or in bad faith, the court shall require the party who initiated such cause, asserted such defense, filed such motion or caused such proceeding to be had to pay the other party named in such action the amount of the costs attributable thereto and reasonable expenses incurred by such party, including reasonable attorney's fees.

BPDI claims that a wide array of Wu's actions – it allegedly ignored certain provisions of the BPDI Proposal, sent BPDI a backcharge to set-off for amounts owed more than a year after incurring the costs, made allegations about BPDI's means and methods being improper only at trial, ignored the Subcontract's Notice to Cure and instead fired BPDI, and shifted positions on whether or not the CORs had merit – must be characterized as bad faith.

The Delaware Superior Court has held that bad faith actions may involve "some kind of dishonest motive or purpose."[22] BPDI compares Wu's "changing positions" to *Nason Construction v. Bear Trap,* in which two parties to a construction contract argued over the validity of a number of change orders.[23] The Court found that the defendant initially withheld payments for one reason, then "after an explanation by Plaintiff as to why Defendant's position was incorrect", adopted a different rationale, and then during trial, admitted the value of the amount being sought while still opposing payment.[24] Ultimately, this "change of story" was a factor in determining the reasonableness of the claim of bad faith.[25] The Court found that the defendant was attempting to avoid paying its contractual obligation for "a dishonest or improper purpose".[26]

Here, the Court does not find Wu's changing position on the CORs to have been in bad faith. Wu chose not to pay the CORs, even ones it previously found to have merit, because it believed that they were technically owner claims, and therefore the responsibility of Delmarva to reimburse BPDI. At trial, Wu argued that Paragraph 9 of the Wu Addendum should govern the dispute, and for that reason, the payments from "contractor to subcontractor are contingent upon payment from owner to contractor."[27] This would mean that Wu would not need to pay BPDI until Delmarva paid Wu. The Court disagreed with this interpretation of the contract. But this decision to withhold payment was "not deceitful nor made without substantial reason."[28] It was not a matter of Wu changing its story, and

---

[22] *Nason Const., Inc. v. Bear Trap Com.*, 2008 WL 4216149 at *7, (Del. Super. Aug. 6, 2008).
[23] *Id.* at *3-4.
[24] *Id.* at *6.
[25] *Id.* at *5.
[26] *Id.* at *6.
[27] Wu Addendum, ¶ 9.
[28] *DDP Roofing Services, Inc. v. Indian River Sch. Dist.*, 2010 WL 4657161 at *3, (Del. Super. Nov. 16, 2010).

giving new and different reasons for not paying.[29] It was not holding these CORs "hostage".[30] Rather, the parties disagreed over which portion of the contract governed these COR requests. Delaware courts have found a dishonest purpose or motive, or an element of scienter, as the "common thread" for all definitions of bad faith. This situation does not reflect such a motive or purpose.

BPDI's additional arguments for bad faith are belied by Wu's position as a contractor, subservient to site owner Delmarva. BPDI asserts that Wu ignored the Subcontract's Notice to Cure, and instead summarily dismissed BPDI from the project. BPDI also suggests that Wu's "means and methods" argument was manufactured at trial, as there had been no previous complaint. Yet these arguments ignore the presence of Delmarva, a party that is still facing legal determination in this bifurcated action. The evidence suggests that Delmarva instructed Wu to terminate BPDI.[31] Allegations of improper means and methods came through the testimony of Delmarva Project Engineer Ralph Boedeker.[32] As Wu states, it is "in an unusual position" as the intermediary in the contractual relationship between Delmarva, Wu, and BPDI. It is more likely that this in-between position was the impetus for Wu's conduct rather than bad faith. Thus, the Payments Act is not applicable. Therefore, the Court will maintain the American Rule; parties shall pay their own attorneys' fees.

---

[29] *Nason Const., Inc. v. Bear Trap Com.*, 2008 WL 4216149 at *5, (Del. Super. Aug. 6, 2008)
[30] *Rodman Const. Co., Inc. v. BPG Residential Partners, V, LLC*, 2013 WL 656176 at *17, (Del. Super. Jan. 8, 2013).
[31] Def.'s Proposed Findings of Fact and Conclusions of Law ¶ 68.
[32] *Id.* at ¶ 93.

## C. Ancillary Arguments

BPDI also asserts that it is entitled to (1) a judgment on its mechanic's lien claim (2) a judgment in the full amount of the outstanding subcontract balance and (3) an application of prejudgment interest at 24% annum.

After the Court granted Delmarva's Motion for Partial Summary Judgment on April 15, 2021, Delmarva's mechanic's lien was discharged and in its place, Wu posted a Mechanic's Lien Release Bond with Wu as principal and BPDI as obligee.[33] Wu now disputes the validity of the mechanic's lien, and whether its authenticity should have been argued at trial. The Court finds that the parties had stipulated before trial that all of the requirements to perfect the mechanic's lien had been satisfied.[34] For that reason, the Court enters a judgment for BPDI on Count 1 as to the mechanic's lien. Wu contends that evidence was not presented at trial to prove the elements of a valid lien, including whether it was perfected. The Court finds that a pre-trial stipulation countervails the need to prove such elements. There was no need for BPDI to waste trial time on an issue that had already been resolved by party agreement.

Further, BPDI is correct that it took a position at trial about the outstanding subcontract balance, when BPDI's Vice President Peter Robey testified about its alleged damages.[35] This included an additional $12,951.61 in approved change orders that were not paid and another discrepancy of $17,906.93 in retainage fees for work that was performed.[36] Wu challenges this as being just a trial demonstrative but then did not challenge the asserted amounts. There was no

---

[33] Pl.'s Supplemental Br. at 14. *See* Wu Letter on 5/17/2021.
[34] Prior to trial in this matter, Wu changed its counsel. The stipulation among the parties took place while Wu was represented by prior counsel.
[35] Robey Trial Tr. 5/25/2021, 70:1-72:2.
[36] *Id. Also, See* Pl.'s Supplemental Br. at Ex. A.

objection made to Mr. Robey's testimony at trial. The Court finds that by way of Mr. Robey's testimony, BPDI's demonstrative exhibit, and Wu's lack of objection up to this point, BPDI has satisfied its burden to prove this outstanding judgment. Thus, the Court finds that BPDI is entitled to an additional $30,858.54 outstanding on the Subcontract.[37]

As to prejudgment interest, BPDI ignores its former calculations by now requesting a 24% annum interest rate. At trial, when calculating damages, Mr. Robey stated, "the next line item is what is titled Prejudgment Interest at the Delaware Stated Rate."[38] In addition, one of BPDI's former damages calculations includes a 5.25% interest rate, which represented the legal rate of interest at the time of trial.[39] Notably, this interest calculation was set forth in the same demonstrative that BPDI relies upon for its outstanding subcontract balance.[40] Thus, the Court shall apply the 5.25% rate of interest to its award of damages, as originally set forth in its underlying Memorandum Opinion.[41]

**D. Conclusion**

For the forementioned reasons, the Court finds that Wu is not liable for BPDI's attorneys' fees. Accordingly, pursuant to Delaware law, the parties are responsible for paying their own fees. As to the ancillary issues, judgment is hereby entered in favor of BPDI on Count I as to the mechanic's lien. The Court also enters a modified judgment in favor of BPDI for $420,066.04 plus prejudgment interest at a rate of 5.25%.

---

[37] Trial Demonstrative Ex. B.
[38] Robey Trial Tr. 5/25/2021, 68:16-69:3.
[39] Trial Demonstrative Ex. B.
[40] *Id.*
[41] Robey Trial Tr. 5/25/2021, 72:13-19.

**IT IS SO ORDERED,** this 18th day of August, 2022.

_____
Sheldon K. Rennie, Judge